IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

```
PLYMOUTH INDUSTRIES, LLC,            )
a Nebraska Limited Liability         )
Company,                             )
                                     )
     Plaintiff and Counterclaim      )          8:05CV196
     Defendant,                      )
                                     )
          v.                         )
                                     )
SIOUX STEEL COMPANY,                 )
a South Dakota Corporation,          )
                                     )
     Defendant and Counterclaim      )
     Plaintiff.                      )
_____)
PLYMOUTH INDUSTRIES, LLC,            )
a Nebraska Limited Liability         )
Company,                             )
                                     )
     Plaintiff and Counterclaim      )          8:05CV469
     Defendant,                      )
                                     )
          v.                         )
                                     )
SIOUX STEEL COMPANY,                 )     MEMORANDUM AND ORDER
a South Dakota Corporation,          )
                                     )
     Defendant and Counterclaim      )
     Plaintiff.                      )
_____)
```

This matter is before the Court on the motion for
summary judgment of no inequitable conduct re:  U.S. Patent No.
6,951,189 filed by plaintiff and counterclaim defendant, Plymouth
Industries, LLC, ("Plymouth") (Filing No. 85 in 8:05CV196; Filing
No. 63 in 8:05CV469) and the motion for summary judgment of
unenforceability of U.S. Patent No. 6,951,189 for inequitable
conduct filed by defendant and counterclaim plaintiff, Sioux

Steel Company ("Sioux Steel") (Filing No. 89 in 8:05CV196; Filing No. 69 in 8:05CV469).  Having reviewed the motions, the parties' briefs and evidentiary submissions, and the applicable law, the Court finds that Plymouth's motion should be denied and that Sioux Steel's motion should be granted in part and denied in part.

### Standard of Review

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1023 (8th Cir. 2003). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The proponent need not, however, negate the opponent's claims or defenses.  *Id.* at 324-25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus.*

-2-

*Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting

Fed. R. Civ. P. 56(e)).  A "genuine" issue of material fact is

more than "some metaphysical doubt as to the material facts."

*Id.* at 586.

        "Determining at summary judgment that a patent is

unenforceable for inequitable conduct is permissible, but

uncommon." *Digital Control Inc. v. Charles Machine Works*, 437

F.3d 1309, 1313 (Fed. Cir. 2006); *see also Ferring B.V. v. Barr

Lab. Inc.,* 437 F.3d 1181, 1187 (Fed. Cir. 2006) (quoting *Digital

Control* , 437 F.3d at 1313).  A genuine issue of material fact is

not raised by the submission of "merely conclusory statements or

completely insupportable, specious, or conflicting explanations

or excuses." *Digital Control,* 437 F.3d at 1313 (quoting *Monsanto

Co. v. Bayer BioScience N.V.*, 363 F.3d 1235, 1240 (Fed. Cir.

2004).  Thus, summary judgment is appropriate where, for example,

"the affidavits submitted to explain the representations made to

the PTO were 'bare declaration[s] of lack of intent to mislead'

and . . . the explanations provided in the affidavits were either

'nonresponsive' or lacked evidentiary support." *Digital Control*,

437 F.3d at 1313-14 (quoting *Monsanto*, 363 F.3d at 1240).

However, summary judgment may be inappropriate where the

plaintiff submitted an affidavit that "set[ ] forth a non-

frivolous explanation that could lead a finder of fact to

determine that his declaration [to the PTO] was not false or

misleading" or where the plaintiff "state[d] facts supporting a plausible justification or excuse for the misrepresentation." *Digital Control*, 437 F.3d at 1314 (quoting *Monsanto*, 363 F.3d at 1241).

### Background

Plaintiff Plymouth is a limited liability company organized and existing under the laws of Nebraska, with its principal place of business in Plymouth, Nebraska (8:05CV196, Complaint ¶ 1).[1] Defendant Sioux Steel is a corporation existing under the laws of the Delaware, with its principal place of business in Sioux Falls, South Dakota (*Id*. ¶ 2). Plymouth owns the following three U.S. Patents: (1) U.S. Patent No. 6,672,247 ("the '247 patent"), issued January 6, 2004; (2) U.S. Patent No. 6,789,505 ("the '505 patent"), issued September 14, 2004; and (3) U.S. Patent No. 6,951,189 ("the '189 patent"), issued October 4, 2005 (collectively the "Plymouth Patents"). The '189 patent application was filed as a continuation of the '505 patent application, which was a continuation of the '247 patent application (Filing Nos. 90 and 110 ¶¶ 11-13).[2]

---

[1] Unless otherwise noted, all filing numbers reference the 8:05CV196 action.

[2] A continuation application is a second application that contains the same disclosure as the original application. *See Applied Materials, Inc. v. Advanced Semiconductor Materials America, Inc.*, 98 F.3d 1563, 1579 (Fed. Cir. 1996) (Mayer, J., concurring) (stating that "[a]lthough there may be some variation in the scope of the claimed subject matter, a continuation application is based solely on the disclosure of a parent application. By definition, a continuation adds no new matter and is akin to an amendment of a

-4-

Briefly, the patents-in-suit, are directed to a piece of farm equipment, namely, an insert for use in combination with a conventional round or cylindrical bale feeder (*Id*. ¶¶ 15).  The abstracts, written descriptions and drawings in the three Plymouth Patents are identical, and describe the structure depicted in the figures below.  Only the claims contained at the end of the three patents differ (*Id*. ¶¶ 14).

The abstracts for each of the Plymouth Patents describe the invention as follows:

> A hay saver insert is adapted to be removably positioned on and within a conventional cylindrical hay feeder.  The insert includes an upper end portion which rests upon the upper end of the conventional feeder and a conical-shaped portion which extends downwardly into the interior of the feeder.  Hay is placed within the insert and the animals have access thereto.  Hay being pulled from the insert by the animals may fall into the area between the conical shaped portion of the insert and the interior of the feeder which prevents the hay from being trampled.

(Filing No. 94, Exs. 27, 28 and 29).

With reference to Figures 1 and 2, the Plymouth Patents describe the structure of the conventional round or cylindrical bale feeder as follows:

---

pending application.") (citations omitted); *Central Sprinkler Co. v. Grinnell Corp.*, 987 F. Supp. 225, 227 (E.D. Pa. 1995) (explaining that "[a] continuing application is one that makes explicit a claim that was inherent in a previously filed application.  It contains no new information.").

-5-

[T]he numeral 10 refers to a
conventional livestock feeder which
is used to feed cylindrical hay
bales placed therein to livestock.
The bale feeders of the prior art
are generally cylindrical or round
and include a lower ring-shaped
frame member 12, an intermediate
ring-shaped frame member 14, and an
upper ring-shaped frame member 16.
. . . [A] plurality of horizontally
spaced-apart bars or pipes [18] are
welded to and extend between the
frame members 12 and 14.  The bars
are normally covered or enclosed by
a shield 20 which is secured to
frame members 12 and 14 and which
extends therebetween to prevent hay
from passing outwardly through the
bars.

A plurality of spaced-apart bars or
pipes 22 are welded to and extend
between the frame members 14 and 16
in conventional fashion. Normally,
the bars 22 are angularly disposed.
The pipes 22 are sufficiently
spaced-apart to permit the animal
to insert its head between the bars
22 while preventing the animal from
entering the interior of the
feeder.

(*Id.* ¶¶ 16).





Figure 1

Figure 2

–6–

With reference to Figure 3 below, the Plymouth Patents describe
the structure of the insert that is designed to be on and within
the feeder 10.



Figure 3

Plymouth filed a complaint against Sioux Steel on May
2, 2005, alleging that Sioux Steel is infringing Plymouth's '247
and '505 patents by "making, using, selling, and offer[ing] for
sale [hay feeder] inserts covered by [the Plymouth Patents]."
(Complaint 05-CV-196 ¶¶ 7 & 12).  Sioux Steel filed an answer and
counterclaim, denying any infringement, and seeking a declaration
of non-infringement, invalidity, and unenforceability as to each
and every patent claim of the '247 and '505 patents (05-CV-196,
Filing No. 10).  Shortly thereafter, on October 4, 2005, the '189
patent issued (Complaint 8:05CV469 ¶ 6).  Plymouth then filed a
second action against Sioux Steel on October 10, 2005, alleging
the same claims and seeking the same relief for infringement of

-7-

the '189 patent (*Id.*).  Sioux Steel answered, asserting several affirmative defenses and counterclaims, including the affirmative defense that the '189 patent is unenforceable due to inequitable conduct (05-CV-469, Filing No. 15).  The Court consolidated these cases in an order dated December 1, 2005 (8:05CV469, Filing No. 17).  The parties' have filed cross-motions for summary judgment on the inequitable conduct defense.  As the inequitable conduct defense arises from the prosecution history of the Plymouth Patents, the Court will begin there.

## A.    The Prosecution History of the Plymouth Patents

On March 5, 2003, Dennis L. Thomte, as the attorney for Trevor L. Lienemann, filed a patent application with the United States Patent and Trademark Office ("PTO") entitled "HAY FEEDING INSERT" which was assigned Serial No. 10/384,879 (the "879 application") (Filing Nos. 86 & 117 ¶¶ 1).  The 879 application issued as U.S. Patent No. 6,672,247 on January 6, 2004 (*Id.*).  One of the reasons the '247 patent was allowed to issue was because the patent examiner[3] believed the prior art did not disclose a livestock feeder with a removable insert:

> The following is an examiner's
> statement of reasons for allowance:
> prior art does not disclose in
> combination a livestock feeder and
> a removable insert. . . . Prior art
> does disclose inserts in hay

---

[3] The same patent examiner examined all three Plymouth Patents (Filing No. 94, Exs. 27, 28 and 29).

-8-

> rack[s], including conical inserts
> but these are not removable and
> have no means or reasons to make
> them removable.

(Filing Nos. 90 and 110 ¶¶ 25; Filing No. 93, Ex. 20).

On October 13, 2003, prior to the issuance of the '247 patent, Mr. Thomte filed a continuation application which was assigned Serial No. 10.683,738 (the "738 application"). The 738 application issued as U.S. Patent No. 6,789,505 on September 14, 2004 (Filing Nos. 86 and 117 ¶¶ 7). During prosecution of the 738 application, Mr. Thomte filed an information statement with the PTO relating to the 738 application wherein all the prior art references from the 879 application were identified (*Id.* ¶¶ 9).

On August 27, 2005, prior to the issuance of the '505 patent, Mr. Thomte filed a continuation application which was assigned Serial No. 10/928,772 (the "772 application") (*Id.* ¶¶ 10). During the pendency of the 772 application, an information disclosure statement was filed with the PTO wherein the '247 and '505 patents were identified (*Id.* ¶¶ 12). On March 24, 2005, claims 1-9 and 20 of the 772 application were rejected under the judicially created doctrine of non-obviousness-type double patenting. Claims 10-19 of the 772 application were rejected under 35 U.S.C. § 101 as claiming the same invention as that of claims 10-19 in the '505 patent (*Id.* ¶¶ 14). On March 30, 2005, Mr. Thomte filed a response to the office action of March 24,

-9-

2005, which included a terminal disclaimer[4] (*Id*. ¶¶ 18).  On July 14, 2005, the patent examiner allowed claims 1-20 in the 772 application, which were identical to claims 1-20 in the original 772 application (*Id*. ¶¶ 19).

At no time during the prosecution of the Plymouth patents did Mr. Thomte advise the PTO of any prior art references that included a removable insert, as recited in the claims of the Plymouth Patents (Filing Nos. 90 and 110 ¶¶ 26; Filing No. 93 Ex. 22).

B.   **The Alleged Prior Art**

On March 25, 2005, while the '189 patent was pending, Mr. Thomte received a letter from Kirk A. Vander Leest, attorney for Sioux Steel, claiming that the Plymouth patents are invalid in light of alleged prior art references, namely:  (1) U.S. Patent No. D451,649 entitled "Animal Feeder," which issued on December 4, 2001, to David C. Lovell (the "Lovell patent"); (2) the Hay-Mizer® Feeder as sold by David C. Lovell; and (3) the Weldy Enterprises Model R7C round bale hay saver (the "Handi-Klasp Feeder") (Filing No. 94 Ex. 30).  Mr. Thomte also received a letter from Mr. Vander Leest on August 15, 2005, before the '189 patent issued, advising him of an additional product known

---

[4] A "terminal disclaimer" is a written statement by the owner stating that the owner has disclaimed the period of the second issued patent that would extend beyond the expiration of the first patent.  *See* Manual of Patent Examining Procedure § 1.321.

as the Hay$aver Feeder, which is sold and distributed by EFS Distributing of Early, Iowa (Filing Nos. 90 and 110 ¶¶ 87; Filing No. 95 Ex. 37).  A fourth product, namely hay and grain feeders in combination with hay saver inserts manufactured and sold by Townsend's Sales, Inc. of Trafalgar, Indiana (the "Townsend Feeder and Insert") has also since been identified.  Sioux Steel contends that each of these products are material to the patentability of the '189 patent and that Mr. Thomte intentionally failed to disclose these references to the PTO during prosecution of the '189 patent application.

### 1.   The Lovell Patent and The Hay-Mizer Feeder

Both the Lovell patent and the Hay-Mizer Feeder and Insert ("the Hay-Mizer Feeder") are prior art relative to the '189 patent (Filing Nos. 90 and 110 ¶¶ 29, 34).  The Lovell patent, which issued on December 4, 2001, is a design patent claiming the ornamental design for the animal feeder depicted below:



Figure 4:
Perspective View



Figure 5:
Exploded
View



Figure 6: Top
Plan View

The Hay-Mizer Feeder, as depicted in Figures 7 and 8 below, is apparently the physical commercial embodiment of the Lovell patent (Filing No. 111 Ex. 6).  The Hay-Mizer Feeder has a frame consisting of four sidewalls.  During assembly, three of the sidewalls are assembled together with bolts.  The insert is then slid onto the top of the feeder frame and the fourth sidewall is then installed.  The insert is secured to the feeder using bolts (Filing No. 92 Ex. 10).



Figure 7: Hay-Mizer
Feeder and Insert



Figure 8: Hay-Mizer Insert

On April 16, 2005, after receiving Sioux Steel's letter, Mr. Thomte e-mailed Mr. Lovell regarding the Lovell patent and the Hay-Mizer Feeder.[5]  Mr. Thomte's e-mail inquired as to the structure of the Hay-Mizer Feeder:

> I am a patent attorney in Omaha and your Hay-Mizer structure has been brought to my attention as possible prior art with respect to one of my client's patents.  Is the insert removable from the feeder or is it welded to the feeder structure?

---

[5] During his deposition, Mr. Thomte did not recall having contacted  Mr. Lovell regarding the Hay-Mizer Feeder (Def. Ex. 21, Thomte Dep. at p. 100, ln 20 to p. 101, ln 9).  Mr. Thomte now admits that he was mistaken as to this fact.

>           Your web site indicates that the
>           cradle is welded to the feeder
>           while your design patent seems to
>           indicate that the cradle is
>           removable.  I note with interest
>           that my former firm obtained the
>           design patent for you.  Any
>           information you could provide would
>           be appreciated.

(Filing No. 94, Ex. 31).  Mr. Lovell's reply to Mr. Thomte's e-mail does not clearly explain whether the Hay-Mizer Feeder is removable or welded to the feeder (*Id.*).

Mr. Thomte did not disclose the Lovell patent or the Hay-Mizer Feeder to the patent examiner during prosecution of the '189 patent application as Mr. Thomte did not believe that the Lovell Patent or the Hay-Mizer were material prior art. Specifically, Mr. Thomte did not believe that the claimed structure in the Lovell Patent or the Hay-Mizer were prior art because the structure had bars extending over the top of the cradle, which, unlike the '189 patent, prevented the bale from being received within the cradle (Filing No. 110 Ex. 6 ¶ 14, 15).

### 2.   The Handi-Klasp Feeder

On December 28, 2005, approximately two-and-a-half months after the '189 patent issued and nine months after receiving Mr. Vander Leest's letter, Mr. Thomte sent the Commissioner of Patents a post-issuance citation of prior art,

-13-

pursuant to 37 C.F.R. § 1.501,[6] relating to the '505 patent file (Filing No. 120 Ex. 49).  In that letter, Mr. Thomte cited both the Lovell Patent and the Handi-Klasp Feeder as prior art.  Mr. Thomte argued that the claims of the '505 patent differed from that of the Handi-Klasp Feeder because the Handi-Klasp Feeder does not have a removable insert.  Sioux Steel argues that the Handi-Klasp Feeder is relevant to the patentability of the '189 patent because it discloses an additional structure, namely, the upper shield of claim 4 of the '189 patent,[7] which it claims was not addressed in the prior art of record during prosecution of the '189 patent application (8:05CV469, Filing No. 90 ¶ 90).

### 3.   The Townsend Feeder and Insert

On April 20, 2005, after being notified by a client that JDL Sales and Services, Inc. ("JDL") was possibly selling an infringing product, Mr. Thomte sent JDL a cease and desist letter, alleging that it was "selling and possibly manufacturing a feeder with a hay saver insert which infringes one or more

---

[6] 37 C.F.R. § 1.501(a) provides:

At any time during the period of enforceability of a patent, any person may cite, to the Office in writing, prior art consisting of patents or printed publications which that person states to be pertinent and applicable to the patent and believes to have a bearing on the patentability of any claim of the patent. If the citation is made by the patent owner, the explanation of pertinency and applicability may include an explanation of how the claims differ from the prior art.  Such citations shall be entered in the patent file except as set forth in §§ 1.502 and 1.902.

[7] Claim 4 of the '189 patent claims "[t]he combination of claim 3 wherein a shield extends around said upwardly extending and horizontally spaced-apart bars of said insert."  (Filing No. 94 Ex. 29).

-14-

claims of the ['247 and '505 patents]."[8]  (Filing No. 35, Ex. 34;

(Filing No. 93, Ex. 21, Thomte Dep. at p. 27, ln. 14 to p. 28 ln.

14).  During his deposition, Mr. Thomte testified that he used

the word possibly in the cease and desist letter because he had

yet to review a photograph or advertisement of the accused device

at the time he sent the letter (Filing No. 93, Ex. 21, Thomte

Dep. at p. 27, ln. 9 to p. 27 ln. 7).

Shortly thereafter, on or about April 22, 2005, Mr.

Thomte had a telephone conversation with Lois Pennock, the owner

of JDL, wherein Ms. Pennock informed Mr. Thomte that the Townsend

Feeder and Insert ("the Townsend Feeder"), depicted in Figure 9

below, had been sold since the 1980's (Filing No. 93, Ex. 22, No.

34).  Following their conversation, Ms. Pennock sent Mr. Thomte a

letter which included reports indicating that JDL had been

selling the Townsend Feeder since at least 1997 (Filing No. 35,

Ex. 32).  Ms. Pennock's letter also included an undated catalog

that she said had been used for sales in the early 1990's,

apparently depicting the Townsend Feeder (*Id*.).  Mr. Thomte

thereafter went to Townsend's website and pulled up a catalog

sheet that depicted the Townsend Feeder and contained the

statement "[t]his product was added to our catalog on Tuesday 29

June, 2004."  (Filing No. 86 Ex. 7).

---

[8] During his deposition, Mr. Thomte stated that his letter was poorly
dictated and that the word "possibly" should actually have preceded the word
"selling" (Filing No. 93, Ex. 21, Thomte Dep. at p. 26, ln. 18 to p. 27 ln.
7).



Figure 9: Townsend
Feeder and Insert

During his deposition, Mr. Thomte stated, based on the
"added in 2004" statement on the Townsend web site, that he
believed Ms. Pennock was mistaken as to the dates set forth in
her letter and that the Townsend Feeder was not prior art
relative to the Plymouth patents (Filing No. 93, Ex. 21, Thomte
Dep. at p. 35, ln 17 to p. 39, lns. 20-24 and p. 100, lns 8-14;
Filing No. 111, Ex. 6, ¶ 16).  Other than looking at the Townsend
web page, Mr. Thomte did not take any further action to determine
if the Townsend Feeder was prior art relevant to the Plymouth
Patents (Filing Nos. 90 & 110 ¶¶ 75).

Mr. Thomte now admits that the Townsend Feeder is prior
art relevant to the Plymouth patents (*Id.* ¶¶ 81).  Mr. Thomte
also admits that the Townsend Feeder is relevant to the
patentability of the '189 patent because it includes a feed
material receiving insert that is removable from the feeder.
(*Id.* ¶¶ 83).

-16-

### 4.   The Hay$aver Feeder

The Hay$aver Feeder, which was sold in the U.S. prior to March 5, 2002, is prior art relevant to the '189 patent (*Id.* ¶¶ 99).  The Hay$aver, as depicted in Figures 10 and 11 below, has a square feeder frame consisting of four sections (*Id.* ¶¶ 104).  During assembly, three of the four sections are bolted together, the insert is placed on top of the feeder frame, the fourth frame is then installed, and the insert is then bolted to the feeder frame (*Id.* ¶¶ 105-108).



Figure 10: Hay$aver Feeder
and Insert



Figure 11: Hay$aver Insert

Mr. Thomte did not cite the Hay$aver Feeder during prosecution of the '189 patent because he believed that this feeder had the same structure as U.S. Patent No. 5,158,040 (the "'040 patent"), which was of record in connection with the '189 patent application (*Id.* ¶¶ 88).  Mr. Thomte based this belief on the fact that the Hay$aver brochure referenced the '040 patent (Filing Nos. 90 and 110 ¶¶ 109, 88; Filing No. 95 Ex. 38).  Mr.

-17-

Thomte testified that he believed that the insert in the '040 patent was not removable because, in his opinion, it showed the feeder as being welded together.  Believing that the Hay$aver and the '040 patent had the same structure and therefore, that the Hay$aver's insert was welded to the feeder, Mr. Thomte determined that the Hay$aver's insert was cumulative to the prior art before the patent examiner (Filing No. 111, Ex. 6, ¶ 13).  Mr. Thomte now admits that Hay$aver's insert is relevant to the patentability of the '189 patent because it includes a feed material receiving insert that is removable from the feeder, as opposed to being welded to the feeder as Mr. Thomte once thought (Filing Nos. 90 & 110 ¶¶ 101).

## Discussion

### A.   Inequitable Conduct

Patent applicants are required to prosecute patents "with candor, good faith, and honesty."[9] *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1226 (Fed. Cir. 2006) (quoting *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1233 (Fed. Cir. 2003)); see also 37 C.F.R. § 1.56 (entitled "Duty to Disclose Information Material to

---

[9] For purposes of an inequitable conduct determination, the "applicant" includes anyone under a duty to disclose material information to the PTO pursuant to 37 C.F.R. § 1.56, namely: the inventor, the prosecuting attorney or agent, and anyone associated with the inventor or the assignee who is substantively involved in the preparation or prosecution of the application. *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 n. 6 (Fed. Cir.1995).

-18-

Patentability"). A breach of this duty can take several forms including the failure to disclose material information, the submission of false material information, or an affirmative misrepresentation of a material fact. *Bristol-Myers*, 326 F.3d at 1233. A breach of this duty coupled with an intent to deceive or mislead the PTO constitutes inequitable conduct, which, when proven, renders the patent unenforceable. *Id*.

To establish inequitable conduct, Sioux Steel must show by clear and convincing evidence that Plymouth failed to disclose material information with an intent to mislead the PTO. *Id*. at 1233-34. Once the materiality of the information and intent to mislead have been established, the court must "weigh them to determine whether the equities warrant a conclusion that inequitable conduct occurred." *Id*. at 1234. (quoting *Molins PLC v. Textron, Inc*., 48 F.3d 1172, 1178 (Fed. Cir.1995)). "In light of all the circumstances, an equitable judgment must be made concerning whether the applicant's conduct is so culpable that the patent should not be enforced." *Molins PLC*, 48 F.3d at 1178.

### 1. Materiality

Information must be disclosed to the PTO when it is material to patentability. Material information is not limited to prior art, but "embraces any information that a reasonable examiner would be substantially likely to consider important in deciding whether to allow an application to issue as a patent."

-19-

*GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1274 (Fed. Cir. 2001).  In particular, information is material to patentability when it is not cumulative to information already of record in the application and

> (1)  It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or

> (2)  It refutes, or is inconsistent with, a position the applicant [has taken] in:

> > (I)  Opposing an argument of unpatentability relied on by the [PTO], or

> > (ii) Asserting an argument of patentability.

37 C.F.R. § 1.56(b).

Sioux Steel advances two main arguments to support a finding of materiality.  First, Sioux Steel argues that Mr. Thomte committed inequitable conduct because he knowingly withheld references that were highly material to the patentability of the '189 patent.  Specifically, Sioux Steel contends that the Lovell patent, the Hay-Mizer Feeder, the Townsend Feeder, and the Hay$aver Feeder are highly material references because they each anticipate at least one claim of the '189 patent.  While a "withheld reference that anticipates a claim in a patent satisfies the most stringent standards of materiality," *see Fox Industries, Inc. v. Structural Preservation Systems*, Inc., 922 F.2d 801, 804 (Fed. Cir. 1991), the Court is unable, at this time, to determine materiality based on

-20-

anticipation because the Court has yet to construe the meaning of the claims in the '189 patent.  Accordingly, Sioux Steel's anticipation argument fails.

Second, Sioux Steel argues that a finding of materiality is supported by the record because Mr. Thomte failed to disclose the 05CV196 action (the "196 action") in connection with his prosecution of the '189 patent application.  Plymouth did not respond to this argument specifically in its brief, but admits that the 196 action was not disclosed during prosecution of the '189 patent application.

In addition to the general obligation to disclose material information pursuant to 37 C.F.R. § 1.56, a patent applicant must also disclose all litigation related to the subject matter for which a patent is being sought.  Manual for Patent Examining Procedure (MPEP) § 2001.06(c).  Section 2001.06(c) entitled "Information From Related Litigation" provides:

> Where the *subject matter* for which a patent is being sought is or has been involved in litigation, *the existence of such litigation and any other material information arising therefrom must be brought to the attention of the Patent and Trademark Office;* such as, for example, evidence of possible prior public use or sales, questions of inventorship, prior art, allegations of 'fraud,' 'inequitable conduct,' or violation of duty of disclosure. Such

-21-

> information might arise during
> litigation in, for example,
> pleadings, admissions, discovery
> including interrogatories,
> deposition, and other documents,
> and testimony.

MPEP § 2001.06(c) (emphasis added).  While MPEP § 2001.06(c) is

not binding law, courts have frequently noted that the MPEP in

general, and § 2001.06(c) in particular, are instructive.  *See*

*Critikon v. Becton Dickinson Vascular Access, Inc.,* 120 F.3d

1253, 1257 (Fed. Cir. 1997); *ICU Med., Inc. v. B. Braun Med.,*

*Inc.*, 2005 WL 588341 at *13 (N.D. Cal. March 14, 2005).  Related

litigation that should be disclosed under § 2001.06(c) is

material *per se.  See DaimlerChrysler AG v. Feuling Advanced*

*Technologies, Inc*., 276 F. Supp. 2d 1054 (S.D. Cal. 2003)

(concluding that litigation concerning parent patent was material

*per se* under § 2001.06(c) and was clearly information that a

reasonable patent examiner would have considered important in

deciding whether to allow a continuation-in-part application to

issue as a patent); ICU Med., 2005 WL 588341 at *14-15

(concluding that related litigation was material per se where the

patents at issue in the lawsuit shared the same specification and

disclosed the same subject matter as the pending application).

     In the present case, the 196 action was clearly

material to the prosecution of the '189 patent.  It is undisputed

that the '247, '505, and '189 patents disclose the same subject

matter.  They share identical abstracts, written descriptions,

-22-

and drawings.  Thus, a reasonable examiner would have likely considered notice of the '196 action, which involves challenges to the validity and enforceability of the '247 and '505 patents, important in deciding whether to allow the '189 patent application to issue as a patent.

In addition to Plymouth's failure to disclose the 196 action, several other facts in the record, in combination, also support a finding of materiality.  First, Mr. Thomte now admits that the Lovell patent, the Hay-Mizer Feeder, the Hay$aver Feeder, the Townsend Feeder, and the Handi-Klasp Feeder are all prior art relative to the '189 patent.  Second, Mr. Thomte admits that the Townsend and Hay$aver Feeders are relevant to the patentability of the '189 patent because each of those feeders includes a feed material receiving insert that is removable from the feeder.  Third, the fact that Mr. Thomte now admits that the Townsend and Hay$aver Feeders include a removable insert is important because the patent examiner, in allowing the '247 patent to issue, noted that she was doing so, in part, because the prior art did not disclose hay racks with removable inserts. Finally, Mr. Thomte's post-issuance disclosure of the Lovell patent and the Handi-Klasp Feeder is significant because it recognizes that a reasonable examiner would have likely considered those references important in deciding whether to allow the '189 application to issue as a patent.

-23-

2.   **Intent to Deceive or Mislead**

Having found that Mr. Thomte failed to disclose
material information with respect to the prosecution of the '189
patent, the next issue that must be determined is whether Mr.
Thomte intended to deceive the patent examiner.

Even if an omission is found to be material, the
omission must also be found to have been made with the intent to
deceive. *Ferring B.V.*, 437 F.3d at 1190.  "[M]ateriality does
not presume intent, which is a separate and essential component
of inequitable conduct." *Id.* (quoting *GFI, Inc. v. Franklin
Corp.*, 265 F.3d 1268, 1274 (Fed. Cir. 2001)).  "Intent" commonly
means: "Design, resolve, or determination with which [a] person
acts [; a] state of mind in which a person seeks to accomplish a
given result through a course of action." *Molins PLC*, 48 F.3d at
1080 (quoting *Black's Law Dictionary* at 810 (6th ed. 1990)).
Intent to deceive "need not, and rarely can, be proven by direct
evidence." *Ferring B.V.*, 437 F.3d at 1191 (quoting *Merck & Co.
v. Danbury Pharmacal, Inc.*, 873 F.2d 1418, 1422 (Fed. Cir.
1989)).  "Rather, in the absence of a credible explanation,
intent to deceive is generally inferred from the facts and
circumstances surrounding a knowing failure to disclose material
information." *Bruno Indep. Living Aids, Inc. v. Acorn Mobility
Servs., Ltd.*, 394 F.3d 1248, 1354 (Fed. Cir. 2005).  However,
"[g]iven the ease with which a relatively routine act of patent

-24-

prosecution can be portrayed as intended to mislead or deceive, clear and convincing evidence of conduct sufficient to support an inference of culpable intent is required." *Molins PLC,* 48 F.3d at 1181 (quoting *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 939 (Fed. Cir. 1990), *cert. denied*, 498 U.S. 920 (1990)).

While intent to deceive may be based on circumstantial evidence, circumstantial evidence cannot indicate merely gross negligence. *Molins PLC*, 48 F.3d at 1181; *Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.,* 863 F.2d 867, 876 (Fed. Cir. 1988) ("[A] finding that particular conduct amounts to "gross negligence" does not of itself justify an inference of intent to deceive; the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive."). "Courts must view the involved conduct 'in light of all the evidence' and must then determine whether that conduct in its totality manifests a sufficiently culpable state of mind to warrant a determination that it was inequitable." *Molins PLC*, 48 F.3d at 1181 (quoting *Consolidated Aluminum Corp. v. Foseco Int'l, Ltd.*, 910 F.2d 804, 809 (Fed. Cir. 1990)).

Sioux Steel argues that Mr. Thomte intended to deceive the PTO because he failed to take any steps to investigate the materiality of the withheld references once he was put on notice

-25-

as to their existence.  Specifically, in regard to each of the withheld references, Sioux Steel alleges as follows:  (1) that Thomte could have easily, and should have, inquired whether the "added in June 2004" language beneath the Townsend Feeder on the Townsend web site was accurate, particularly in light of Ms. Pennock's letter wherein she stated that the Townsend Feeder had been sold since the 1980's; (2) that Mr. Thomte should have taken steps to inquire whether the Hay-Mizer Feeder was prior art rather than relying on his (a) belief that Hay-Mizer was the commercial embodiment of the Lovell design patent and (b) Mr. Lovell's non-responsive e-mail regarding the removability of the Hay-Mizer's insert; and (3) that Mr. Thomte should have investigated whether the Hay$aver Feeder and the '040 patent, which was of record in connection with the '189 patent application, were the same feeder rather than relying on the reference to the '040 patent in the Hay$aver brochure.

In response to Sioux Steel's motion for summary judgment and in support of Plymouth's motion for summary judgment, Mr. Thomte argues:  (1) that he did not believe the Lovell patent and the Hay-Mizer Feeder were material because the feeder had bars extending over the top of the cradle which prevented hay from being received by the cradle; (2) that he believed the Handi-Klasp did not have a removable feeder and was, therefore, cumulative to the prior art before the PTO; and (3)

-26-

that be believed that the Townsend Feeder was not marketed until sometime in June 2004 since the Townsend web site stated that the feeder was added in June 2004, and was, therefore, not prior art under 35 U.S.C. § 102.

Having carefully reviewed the arguments of counsel and the indices of evidence, the Court finds that there are genuine issues of material fact as to whether Mr. Thomte intended to deceive the PTO. While Mr. Thomte may have been negligent in prosecuting the '189 patent, the Court is unable to conclude, at this time, whether Mr. Thomte's "conduct in its totality manifests a sufficiently culpable state of mind to warrant a determination that it was inequitable" as a matter of law. Likewise, the Court also is unwilling to find at this juncture that Mr. Thomte did not commit inequitable conduct in the prosecution of the '189 patent as a matter of law. The determination of whether Mr. Thomte's conduct was inequitable ultimately rests on credibility determinations that must be reserved for trial.

## Conclusion

In sum, the Court finds as a matter of law that Mr. Thomte failed to disclose material information to the PTO during prosecution of the '189 patent application. The Court, however, is unable to conclude, at this stage, whether Mr. Thomte failed

-27-

to cite this information with the intent to deceive the PTO.
Accordingly,

IT IS ORDERED:

1)  Plymouth's motion for summary judgment of no inequitable conduct re:  U.S. Patent No. 6,951,189 (Filing No. 85 in 8:05CV196; Filing No. 63 in 8:05CV469) is denied.

2)  Sioux Steel's motion for summary judgment of unenforceability of U.S. Patent No. 6,951,189 for inequitable conduct (Filing No. 89 in 8:05CV196; Filing No. 69 in 8:05CV469) is granted in part and denied in part.  It is granted on the issue of materiality, but is denied in all other respects.

DATED this 17th day of October, 2006.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court